IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KENNETH CRAY,

    Petitioner,                              No. CIV S-05-2174 FCD GGH P

    vs.

TOM L. CAREY, Warden,                ORDER &

    Respondent.                       FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Petitioner, represented by appointed counsel, is proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On May 18, 2006, respondent's April 19, 2006 motion to dismiss the first amended petition came on for hearing.  In the opposition to the motion to dismiss, petitioner did not oppose respondent's motion to stay discovery, pending resolution of the motion to dismiss, and the filing of an answer, if it is thereafter ordered.  At the hearing, Heather MacKay appeared for petitioner, and Heather Heckler represented respondent.

First Amended Petition

        Petitioner was convicted of first degree felony murder, following a jury trial in 1977, for which he was sentenced, on January 16, 1998, to an indeterminate life sentence of seven years to life.  First Amended Petition (FAP), pp. 2, 9-10.  In petitioner's first amended

1

1 petition, filed on March 23, 2006, he challenges the governor's March 20, 2003, administrative
2 decision, reversing the California Board of Prison Terms (BPT) October 21, 2002, decision to
3 grant petitioner parole at his eleventh subsequent parole suitability hearing.[1]  Petitioner sets forth
4 the following as the grounds for his challenge to the governor's decision: 1) California life
5 prisoners have a liberty interest in parole protected by due process under clearly established
6 United States Supreme Court decisions; 2) petitioner was denied due process because the
7 governor failed to conduct an unbiased, individualized, non-arbitrary review; 3) petitioner was
8 denied due process because the criteria for determining whether a commitment offense is
9 "particularly egregious" are so vague as to allow meaningless and arbitrary determinations, and
10 there is not some reliable evidence that petitioner's commitment offense currently makes him a
11 risk to public safety if released; 4) petitioner was denied due process because there is not some
12 reliable evidence that his juvenile history currently makes a risk to public safety if released; 5)
13 petitioner was denied due process because there is not some reliable evidence that his behavior
14 while in prison currently makes him a risk to public safety if released; 6) petitioner was denied
15 due process because there is not some reliable evidence that petitioner will pose a risk to public
16 safety unless he participates in further therapeutic programs; 7) petitioner was not afforded due
17 process because there is not some reliable evidence that petitioner's parole plans are so
18 insufficient as to make him currently a risk to public safety if released; 8) the retroactive
19 application by the governor to petitioner of determinate sentencing law policies, criteria and
20 philosophy violates the prohibition against Ex Post Facto laws.  FAP, pp. 21-48.

21 Motion to Dismiss

22          Respondent has moved to dismiss the petition on the ground that this court lacks
23 subject matter jurisdiction because the state supreme court has made clear that California's parole

---

[1] This was the second time Governor Davis reversed the BPT's decision to parole petitioner, the earlier BPT decision having occurred at the tenth suitability hearing in September, 2001.  FAP, pp. 15-16.

scheme does not give rise to a federally protected liberty interest in parole. Motion to Dismiss (MTD), pp. 1, 3-4. Respondent further argues that even if the court finds that a liberty interest exists that petitioner does not contest that he has received all the process due him under clearly established Supreme Court authority. MTD, p. 4.

Discussion

At the outset, it must be pointed out that respondent confuses the subject matter jurisdiction of the court with failure to state a cognizable claim. Clearly, the court has subject matter jurisdiction over petitioner's habeas corpus claim pursuant to 28 U.S.C. § 2254. Federal question jurisdiction exists if a complaint (or petition) purports to state a claim under federal law, regardless of the validity of the claim. Wheeldin v. Wheeler, 373 U.S. 647, 83 S. Ct. 1441, 1444 (1963). Only if the stated federal claim is so wholly insubstantial that even a preliminary review of the merits is not required does the federal court not have jurisdiction. Bell v. Hood, 327 U.S. 678, 66 S. Ct. 773 (1946). It is not every arguably failed claim that deprives the district court of jurisdiction. Here, petitioner properly invoked § 2254 for the basis of his habeas claim. His contentions that he was denied due process by Governor Davis' reversal of the BPT's finding of his suitability for parole is not so insubstantial as to deprive the court of jurisdiction.

Respondent contends that California's parole statute, Cal. Penal Code § 3041, does not give rise to a federal liberty interest. 28 U.S.C. § 2254(d)(1) provides that an application for writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was contrary to or an unreasonable application of clearly established Supreme Court authority.

For the following reasons, the court finds that petitioner has a clearly established liberty interest in parole. Although due process does not require the existence of a parole scheme, California has established one. Not all of the myriad procedures of the parole setting system are pertinent here. The court sets forth that part of the statutory section that is pertinent:

\\\\\

> (a) In the case of any prisoner sentenced pursuant to any provision of law, other than Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, the Board of Prison Terms shall meet with each inmate during the third year of incarceration for the purposes of reviewing the inmate's file, making recommendations, and documenting activities and conduct pertinent to granting or withholding postconviction credit.  One year prior to the inmate's minimum eligible parole release date a panel consisting of at least two commissioners of the Board of Prison Terms shall again meet with the inmate and shall normally set a parole release date as provided in Section 3041.5. The panel shall consist solely of commissioners or deputy commissioners from the Board of Prison Terms.
>
> The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates. The board shall establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime for which the prisoner was sentenced and other factors in mitigation or aggravation of the crime.

Cal. Penal Code § 3041.

In compliance with the statutory mandate, the Board of Prison Terms issued regulations which guide it in finding prisoners convicted of life offenses with parole eligibility for parole setting. Cal. Code Regs. tit. 15, § 2402 sets forth the criteria for determining whether an inmate is suitable for parole.  Section 2402(a) provides that regardless of the length of time served, a prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

Section 2402(c) sets forth the circumstances tending to show unsuitability.  The court lists those of significance here:

> (1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
>
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style manner.
>
> (C) The victim was abused, defiled or mutilated during or after the offense.

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Section 2402(d) sets forth the circumstances tending to indicate suitability:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to the victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for the Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome . . .

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

The Ninth Circuit has held that California's parole scheme gives rise to a cognizable liberty interest in release on parole.  Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003).   The California Supreme Court more recently found that Cal. Penal Code § 3041 is not mandatory and does not create a presumption that parole will be granted.  In re Dannenberg, 34 Cal.4th 1061, 1084, 1087-88 (2005).

Respondent relies in part on a decision by a district judge of this court finding that the California parole scheme for indeterminate sentences does not create a federal liberty interest.  Sass v. Cal. Board of Prison Terms, supra, 376 F. Supp. 2d 975.[2]  In Sass, Judge England found that no federal liberty interest was created because the wording of the parole statute, Cal. Penal Code 3041(a) ("a panel *shall normally* set a release date..) and § 3041(b) ("the panel...*shall set* a release date....") was insufficiently mandatory.  Judge England relied heavily on In re Dannenberg, 34 Cal. 4th 1061, 1098, 23 Cal. Rptr. 3d 417, 443 (2005).  However, even assuming that the "old" Supreme Court paradigm regarding creation of a liberty interest (mandatory act and underlying factual predicates) remains the analytical framework in which to judge the creation of right-to-parole liberty interests, see e.g., Board of Pardons v. Allen,[3] 482 U.S. 369, 378, 107 S.Ct. 2415, 2421(1987) (mandatory language in a parole statute creates a "presumption of release" and gives rise to a liberty interest), California law, both before and after Dannenberg finds that the California parole scheme for indeterminate offenses does create a liberty interest.

---

[2] Both parties have noted that Sass was argued before the Ninth Circuit on March 16, 2006.

[3] In Board of Pardons v. Allen, supra, at 373, 107 S. Ct at 2418, the Supreme Court noted the "two major holdings" of Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 11, 99 S. Ct. 2100. 2106 (1979), "that the presence of a parole system itself does not give rise to a constitutionally protected liberty interest in parole release" but that the Nebraska statute at issue "did create 'an expectation of parole' protected by the Due Process Clause."  In Greenholtz, "the mandatory language and the structure of the Nebraska statute ....created an 'expectancy of release,' which is a liberty interest entitled to such [due process] protection."  Allen, at 372, 107 S. Ct. at 2417.

> In sum, the governing statute provides that the Board *must grant parole* unless it determines that public safety requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction. (Pen.Code, § 3041, subd. (b).) And as set forth in the governing regulations, the Board *must set a parole date* for a prisoner unless it finds, in the exercise of its judgment after considering the circumstances enumerated in section 2402 of the regulations, that the prisoner is unsuitable for parole. (Cal.Code Regs., tit. 15, § 2401.) Accordingly, parole applicants in this state *have an expectation that they will be granted parole* unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and by regulation.

In re Rosenkrantz, 29 Cal. 4th 616, 654, 128 Cal. Rptr. 2d 104, 138 (2002) (emphasis added).

Respondent argues that in Rosenkrantz, the state supreme court's holding is limited to a finding that parole decisions are "'a protected liberty interest in the California due process clause'"; thereby contending that the protected liberty interest identified therein is not one that arises under the federal constitution. MTD, p. 8; id., at 660. It is difficult to conceive of words which mirror the requirements of the Allen mandatory-act-in light-of-satisfied-factual-predicates paradigm more than the emphasized words of Rosenkrantz. Indeed, Allen, speaking explicitly to federal Due Process Clause protections, and Rosenkrantz use the same terminology, i.e. "presumption" of release and "expectation" of release. These are the words of federal liberty interest creation. It is not material that great discretion is vested within the administrative agency granting parole. Allen supra. See also the post-Dannenberg case of In re DeLuna,126 Cal. App. 4th 585, 591, 24 Cal. Rptr. 3d 643, 647 (2005):

> Penal Code section 3041, subdivision (b) requires the Board to "set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." *This statute creates a conditional liberty interest for a prospective parolee.* (Cf. Rosenkrantz, supra, 29 Cal.4th at p. 661, 128 Cal. Rptr.2d 104, 59 P.3d 174; McQuillion v. Duncan (9th Cir.2002) 306 F.3d 895, 901-902.) (emphasis added)[4]

---

[4] Dannenberg did find that California prisoners had no liberty interest in a *uniform* parole date, 34 Cal. 4th at 1098 (n.18), 23 Cal. Rptr. 3d at 443 (citing Rosenkrantz); however, this is a

7

1  The undersigned can only find that California law is in disarray on the subject of
2 liberty interest created by the California parole statutes.  Dannenberg did not overrule
3 Rosenkrantz, and implied overrulings are extremely disfavored.  Scheiding v. Gen. Motors, 22
4 Cal. 4th 471, 478, 93 Cal. Rptr. 2d 342, 346 (2000).  Indeed, as the undersigned noted at the
5 hearing, California appellate court cases post- Dannenberg continue to find a liberty interest in
6 California's state parole scheme, citing Rosenkrantz.  See e.g., In re DeLuna, supra, 126 Cal.
7 App.4th 585, 24 Cal. Rptr. 643; see also, In re Scott, 133 Cal. App.4th 573, 590, 34 Cal. Rptr.
8 905 (Cal. App.1st Dist. 2005) (noting, inter alia, that the governor's decision reversing a BPT
9 decision in favor of parole "is subject to judicial review pursuant to the 'some evidence' standard
10 set forth in Rosenkrantz....").  Therefore, Biggs should not, and cannot, be cast aside based on the
11 ambiguities in California law unless the Ninth Circuit so holds.  Accordingly, respondent's
12 motion to dismiss on grounds that petitioner does not have a liberty interest parole should be
13 denied.

14  Respondent also argues that the California parole scheme does not give rise to a
15 federal liberty interest under Sandin v. Conner, 515 U.S. 472, 483-85, 115 S. Ct. 2293 (1995).
16 MTD, pp. 17-19.  Sandin requires a determination of whether there is a state-created liberty
17 interest giving rise to federal due process protections by evaluating whether an action imposes a
18 "significant and atypical hardship on the inmate in relation to the ordinary incidents of prison
19 life."  Sandin, at 484, 115 S. Ct. 2293.  Respondent correctly observes that the Ninth Circuit has
20 rejected the Sandin analysis in the parole context, limiting its applicability to cases that involve
21 internal prison disciplinary regulations, citing McQuillion v. Duncan, 306 F.3d 895, 903 (2002),
22 \\\\\
23 \\\\\

---

25 far cry from holding that the parole scheme as a whole does not create a conditional liberty
   interest.  Petitioner argues that Dannenberg is not inconsistent with Rosenkrantz, contending that
26 the Dannenberg court dealt with a discrete issue and "was not faced with any dispute regarding
   the existence of a due process liberty interest[]" under the state or federal constitutions.  Opp., p.
   6.

arguing that, nevertheless, the Supreme Court has not so delimited Sandin;[5] that the Ninth Circuit has "seemed to consider" both Greenholtz and Sandin, in the context of a review of federal prisoners' applications for a discretionary one-year sentence reduction, citing Jacks v. Crabtree, 114 F.3d 983, 986 n.4 (9th Cir. 1997); and that other circuits have applied Sandin in different types of release decisions.

None of this, however, mitigates this court's obligation to follow the binding authority of the Ninth Circuit which, as respondent has noted, has explicitly rejected a Sandin analysis in the parole context. (The undersigned notes, further, that in Sass, a case on which respondent relies, the court explicitly found that Sandin was not applicable in the context of considering a liberty interest in parole. See Sass, supra, 376 F. Supp. 2d at 980).[6]

Finally, respondent contends that the only clearly established Supreme Court authority speaking to the process to which a petitioner is due when there is a federal liberty interest in parole is an opportunity to be heard be afforded that a petitioner be advised of the reasons for his or her not having been found suitable for parole. MTD, p. 21, citing Greenholtz, 442 U.S. 1, 16, 99 S. Ct. 2100, 2108 (1979). Petitioner responds that such an argument misconstrues the basis of his challenge which is that the contention that the governor violated his constitutional rights by basing his decision on unchangeable facts with regard to the offense for which petitioner was convicted, his pre-offense history, and disciplinary violations in the distant past. Opp., p. 30. He contends, moreover, that the governor was not unbiased in his decision making and does not provide some evidence that petitioner is currently dangerous. Petitioner argues that the Ninth Circuit addressed similar issues in Biggs, wherein, although the court found the reliance by the BPT on the gravity of the offense and pre-imprisonment conduct could initially justify a denial of parole, a repeated denial on only those same grounds, in the case of a

---

[5] However, in the recent Supreme Court decision respondent cites as a signal of the possibility of an expansion of the application of a Sandin analysis to a parole context, Wilkinson v. Austin, 545 U.S. 209, 125 S. Ct. 2384, 2394 (2005), respondent concedes that the case involves a conditions of confinement issue and does not address parole release. MTD, p. 18.

[6] Petitioner also made this observation. Opp., p. 27.

1  petitioner with continuing "exemplary behavior" and "evidence of rehabilitation," could
2  implicate due process: "[a] continued reliance in the future on an unchanging factor, the
3  circumstance of the offense and conduct prior to imprisonment...could result in a due process
4  violation." Biggs v. Terhune, supra, 334 F.3d at 916-917. Petitioner also quotes the
5  undersigned at length in an excerpt from Irons v. Warden, 358 F. Supp.2d 936, 947 (E.D. Cal.
6  2005). Opp., p. 31. In that instance, the court granted petitioner's application where the BPT
7  continued to deny parole based on factors that could never change, effectively transmuting the
8  sentence into one of life without the possibility of parole. Whether petitioner herein has been
9  denied due process or not cannot yet be determined, but respondent's motion to dismiss on the
10 ground that the issues raised herein do not implicate due process should be denied.

11         Respondent should be directed to file an answer addressing the merits of
12 petitioner's claims. Respondent's motion to stay discovery pending resolution of the motion to
13 dismiss and the filing of an answer, if required, a motion expressly unopposed by petitioner, will
14 be granted.

15         Accordingly, IT IS ORDERED that:

16         1. Respondent's April 19, 2006 motion to stay discovery pending resolution of
17 the motion to dismiss and, if thereafter required, the filing of an answer, which petitioner did not
18 oppose, is granted;

19         2. Upon adoption of these Findings and Recommendations, should that occur,
20 and after the filing of an answer by respondent, petitioner may re-notice the motion for discovery,
21 originally filed on March 9, 2006, within ten (10) days of the filing of an answer.

22         IT IS HEREBY RECOMMENDED that the motion to dismiss, filed on April 19,
23 2006, be denied and respondent be directed to file an answer within thirty days of adoption of
24 these Findings and Recommendations, should that occur.

25 \\\\\
26 \\\\\

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 6/26/06

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
cray2174.mtd